IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| BUCKEYE STATE MUTUAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )   CIVIL ACTION NO. 5:17-CV-366 (MTT) |
| ROBERT B. MIXON, *et al.*, | ) ) ) |
| Defendants. | ) ) ) |

### ORDER

Plaintiff Buckeye State Mutual Insurance Company has moved for default judgment against Defendants Robert B. Mixon and Mixon and Company Agency, Inc. ("The Agency") (collectively "Defendants"). For the following reasons, that motion (Doc. 69) is **GRANTED** as to The Agency and **DENIED** as to Mixon.

### I. BACKGROUND

**A. O.C.G.A. § 33-7-11**

It is appropriate to begin with a summary of two provisions of Georgia's uninsured motorist ("UM") insurance statute.

**1. Amount or Limits of UM Coverage**

O.C.G.A. § 33-7-11 requires an insurer to provide UM coverage in an amount equal to the policy limits for liability coverage unless the insured "*affirmatively chooses uninsured motorist limits in an amount less than the limits of liability.*" O.C.G.A. § 33-7-11(a)(1)(B) (emphasis added). Absent that affirmative choice, however manifested, a policy will provide UM limits of coverage equal to the liability limits of coverage.

### 2. Reduced By/Added On UM Coverage

In Georgia, insurers may offer "reduced by" UM coverage or "added on" UM coverage. Added on UM coverage is the default UM coverage. O.C.G.A. § 33-7-11(b)(1)(D)(ii)(I). Added on UM coverage is "available as additional insurance coverage in excess of any available bodily injury liability insurance and property damage liability insurance." *Id.* To put it simply, the limits of this coverage are added to whatever liability coverage is carried by the at-fault driver. Thus, an insured with added on coverage has available to her the at-fault party's liability coverage and the entire limits of her UM coverage. A policy holder can reject added on UM coverage only in writing. *Id.*

If, on the other hand, an insured driver selects in writing reduced by UM coverage, then the insured will only be covered for, at most, the difference between the amount of the insured's UM coverage and the amount of the at-fault driver's liability coverage. O.C.G.A. § 33-7-11(b)(1)(D)(ii)(II). In other words, the available UM coverage is reduced by the at-fault driver's liability coverage. Again, reduced by coverage must be selected in writing; without that written selection, a policy provides added on UM coverage. *Id.*

### B. Factual Allegations

The admitted allegations of the amended complaint establish these facts. Mixon, at all relevant times, "was a licensed insurance agent in the State of Georgia and was the owner and operator of [The Agency]." Doc 62 ¶ 5. Buckeye entered into an agency agreement with The Agency pursuant to which The Agency had the authority to bind

coverage on behalf of Buckeye. *Id.* ¶¶ 8,[1] 54.  Around June 11, 2015, Defendants switched the automobile insurance policy of two of its customers, Dana and Britton Martin, from Safeco Insurance Company to a policy provided by Buckeye. *Id*. ¶¶ 9-10.  Although the Martins received a policy on June 11 with liability coverage of $250,000 per person and $500,000 per occurrence, the Martins did not make a choice about the amount or type of UM coverage they wanted.  *Id.* ¶ 11-12.  However, "[b]ased upon the information provided by Defendants, Plaintiff collected a premium for [the Martins' policy] and issued [the Martins a policy] for reduced UM coverage with policy limits of $50,000 per person / $100,000 per occurrence."  *Id.* ¶ 13.  Under the agency agreement, The Agency had a duty to secure from the Martins a selection form stating this was the amount and type of UM coverage the Martins desired.  *Id.* ¶ 40.  The Agency failed to secure the selection forms before binding coverage for the Martins.  *Id.*  In short, The Agency bound a policy that provided UM coverage less than liability coverage and UM coverage reduced by an at-fault driver's liability coverage even though The Agency did not obtain from the Martins the coverage selection forms as it was supposed to under the contract.

The Martins were in a serious car accident eight days after their insurance policy with Buckeye went into effect.  *Id.* ¶ 14.  The at-fault driver's liability insurer tendered $50,000, its total liability limits, to the Martins.  *Id.* ¶ 25.  The Martins' total damages, however, far exceeded that amount.  *Id.* ¶ 26.  After the accident, someone forged the signature of Britton Martin on two UM coverage selection forms, and dated the forms

---

[1] Actually, paragraph 8 of the amended complaint alleges Mixon was also a party to the contract, but, as explained below, the Court has already ruled Buckeye had no viable claim against Mixon for breach of contract.

June 11, 2015, even though the forms were not signed until after June 19.  *Id.* ¶¶ 17-19. These backdated forms purported to select reduced by UM coverage and also selected a lower UM coverage amount than the Martins' liability coverage.  *Id.* ¶ 20.  However, *at the time of the accident*, Buckeye did not possess a coverage form from the Martins stating whether they wanted reduced by or added on UM coverage.  *Id.* 16.  Further, *at the time of the accident*, the Martins had not made an affirmative choice on the amount of UM coverage they desired.  *Id.* ¶ 11.  These admitted facts resulted in Buckeye's potential UM exposure increasing from $100,000 per incident to $500,000 per incident.  *Id.* ¶ 23.  Buckeye eventually settled the Martins' claims for a total of $350,000— $300,000 more than they would have paid if the Martins' coverage selection forms had been secured by Defendants.  *Id.* ¶¶ 28-29.

Buckeye filed suit against Defendants on September 26, 2017.  Doc. 1.  At a hearing on September 9, 2020, the Court allowed Buckeye to amend its complaint to clearly state its allegations concerning the issue of UM coverage selection.  Doc. 63. Buckeye did so, and that pleading was personally served on Defendants on September 11.  Doc. 67.  Defendants did not timely answer the complaint,[2] and on October 12, the Clerk entered default against Defendants.  Doc. 68.  Buckeye has now moved for

---

[2] The Court is aware that Mixon mailed his answer to the Clerk.  However, that answer was not filed until October 13.  Doc. 70.  Even if there was a mailbox rule for non-prisoner pro se litigants, the envelope which contained the answer is postmarked October 6, thirteen days after the deadline to file an answer. Doc. 70-1; Fed. R. Civ. Pro. 15(a)(3).  Furthermore, this is not the first time that Defendants have either failed to meet deadlines or failed to obey court orders.  Docs. 38 (failure to keep the court informed respecting where notices, pleadings, or other paper may be served); 39 (failure of The Agency to retain counsel, despite the fact that it was informed it could not proceed pro se); 53 (failure of Mixon to respond to court order to show cause why default judgment should not be entered against him); 46 (failure of Defendants to submit pretrial submissions); 63 (failure of Defendants to attend hearing).

default judgment against Defendants. Doc. 69. On October 20, 2020, the Court heard evidence relating to Buckeye's damages.

## II. STANDARD

At a party's request and following the Clerk's entry of default, the Court may enter a default judgment against a defendant who has failed to plead or otherwise defend. *See* Fed. R. Civ. P. 55; *Solaroll Shade & Shutter Corp., Inc. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1134 (11th Cir. 1986). Entry of default judgment is committed to the discretion of the Court. *Hamm v. Dekalb Cty.*, 774 F.2d 1567, 1576 (11th Cir. 1985). However, default judgment does not follow automatically from an entry of default. The Court "must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. App'x 860, 863 (11th Cir. 2007); *see also Nishimatsu Constr. Co. Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[3]

## III. JURISDICTION

To enter a valid default judgment, the Court must, of course, have both personal and subject matter jurisdiction. *Rash v. Rash*, 173 F.3d 1376, 1381 (11th Cir. 1991); *see also Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatoviskiy*, 242 F.3d 322, 324 (5th Cir. 2001) ("When entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction [over both] the subject matter and the parties."). Here, the Court has subject matter

---

[3] The Eleventh Circuit has adopted as binding all decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

jurisdiction over Buckeye's claims based on diversity jurisdiction, as Buckeye has properly alleged it is an Ohio corporation, Defendants reside in Georgia, and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332; Doc. 62 ¶¶ 1−6.

Moreover, the allegations sufficiently allege that the Court has personal jurisdiction over Defendants.  Specifically, the Agency "is a Georgia Corporation with its principal place of doing business situated in Wilkinson County, Georgia and may be served by its registered agent for service of process, Robert B. Mixon, III, at the registered office of said corporation situated at 268 Milledgeville Highway, Gordon, Wilkinson County, Georgia 31031," which is located within the Middle District of Georgia.  *Id.* ¶ 3; *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (holding that a corporation's place of incorporation and principal place of business are bases for general jurisdiction).  Mixon resides in Wilkinson County and is subject to this Court's jurisdiction.  *Id.* ¶ 2.  In sum, the Court has both subject matter and personal jurisdiction over this matter.

### IV. DISCUSSION

**A. The Agency's Liability**

   **1. Breach of Contract**

"The elements of a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken."  *SAWS at Seven Hills, LLC v. Forestar Realty, Inc.*, 342 Ga. App. 780, 784, 805 S.E.2d 270, 274 (2017).

Buckeye specifically alleges in its amended complaint that it entered into a contract with The Agency in 2013.  Doc. 62 ¶ 8; *see* Doc. 23-3 at 141-43.  Buckeye

further alleges that The Agency breached the contract "by, inter alia, failing to secure a UM selection/rejection form from [Britton] Martin." Doc. 62 ¶ 40. Finally, Buckeye asserts that because of The Agency's breach, Buckeye "suffered damages in an amount to be proved at trial." *Id.* ¶ 41. These allegations are sufficient to entitle Buckeye to default judgment on its breach of contract claim against The Agency.

### 2. Attorney's Fees and Costs of Litigation

Buckeye also asserts a claim for attorney's fees pursuant to O.C.G.A. § 13-6-11. To be successful on a claim for attorney's fees, a plaintiff must show that "the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." O.C.G.A. § 13-6-11. For a defendant to defeat a claim for attorney's fees based on the defendant being stubbornly litigious, the defendant must only show that there was "the existence of a 'bona fide controversy' between the parties." *Nash v. Reed*, 349 Ga. App. 381, 384, 825 S.E.2d 853, 856 (2019).

Buckeye claims that it made demands "upon Defendants for the damages incurred … but to date, Defendants have denied Plaintiff's demands or have otherwise failed and/or refused to remedy the damages outline [sic] herein. Plaintiff therefore makes a demand for attorney's fees and costs of litigation as the Defendants have been stubbornly litigious[.]" Doc. 62 ¶ 61. The Agency has failed to respond timely to Buckeye's amended complaint and thus not shown that there was a bona fide controversy in this case. Therefore, Buckeye has properly alleged that The Agency has been stubbornly litigious, and Buckeye is entitled to reasonable attorney's fees and costs.

**B. Mixon's Liability**

    **1. Breach of Contract**

In its amended complaint, Buckeye asserts a claim of breach of contract against both Defendants. Doc. 62 ¶¶ 36-41. However, the Court previously granted partial summary judgment dismissing the breach of contract claim against Mixon individually because "Buckeye and the Agency were the only parties to the contract." Doc. 56 at 2 (citing Doc. 21-3 at 143). Buckeye cannot breathe life into this dead claim simply by filing an amended complaint. Therefore, Buckeye's breach of contract claim against Mixon fails.

    **2. Negligence**

Buckeye asserts, in a conclusory fashion, a negligence claim against Mixon. Doc. 62 ¶¶ 30-35. For Buckeye to recover on this negligence claim it must show "four elements: a duty, a breach of that duty, causation and damages." *St. Jude's recovery Center, Inc. v. Vaughn*, 354 Ga. App. 593, 595 (2020) (quoting *Goldstein, Garber & Salama, LLC v. J.B.*, 300 Ga. 840, 841 (1), 797 S.E.2d 87, 89 (2017)). Neither the amended complaint nor Buckeye's briefing reveals a basis for or a source of a tort duty on the part of Mixon.[4] When the non-performance or ineffective performance of a contract is at issue, a tort cause of action can arise only if an independent tort duty was breached. *Orkin Ext. Co. v. Stevens*, 130 Ga. App. 363, 365, 203 S.E.2d 587, 590-91 (1973). "A defendant's mere negligent performance of a contractual duty does not

---

[4] At an earlier stage of litigation, the Court questioned how a simple negligence duty arose in this case. Buckeye then seemed to change its position and asserted Defendants were liable for "negligent misrepresentation," a claim not asserted in Buckeye's original complaint or subsequently filed amended complaint. Doc. 31 at 7. Confusingly, and perhaps proving the Court's point, Buckeye also argued Mixon owed Buckeye a duty "as someone deriving economic benefit from both the contract and the premium received from the insured." *Id.*

create a tort cause of action; rather, a defendant's breach of a contract may give rise to a tort cause of action only if the defendant has also breached an independent duty created by statute or common law." *Wallace v. State Farm Fire & Cas. Co.*, 247 Ga. App. 95, 98, 539 S.E.2d 509, 512 (2000).

Here, Buckeye has alleged that Mixon owed a "legal duty to act in accordance with industry standards" and "a legal duty to exercise a reasonable degree of care, skill and ability which is generally taken and considered to be such a degree of care and skill as ordinarily employed by others of the same profession under similar conditions and like circumstances." Doc.62 ¶¶ 31, 32.  For one thing, these appear to be allegations of duties owed by professionals or experts and there is nothing in the amended complaint establishing that Mixon is an expert or what the expert standard of care is.  Moreover, those duties, as far as the amended complaint tells us, arose out of the contract between Buckeye and The Agency.  Put another way, the duty Buckeye alleges Mixon breached is a contractual duty, not an independent tort duty.  Because Buckeye has not alleged or otherwise identified an independent duty owed by Mixon outside of the contract, Buckeye's negligence claim against Mixon fails.

### 3. Fraud

Buckeye asserts a fraudulent misrepresentation claim against Mixon.  Doc. 62 ¶¶ 42-46.  To state a claim for fraudulent misrepresentation, Buckeye must show: (1) that Mixon made false representations; (2) Mixon was aware the misrepresentations were false; (3) the misrepresentations were made by Mixon with the intent to deceive Buckeye; (4) Buckeye justifiably relied on the misrepresentation; and (5) Mixon's

misrepresentations resulted in damages.  *Clemons v. Delta Airlines, Inc.*, 338 Ga. App. 844, 847 (2016).

Buckeye alleges that Mixon intentionally made two material misrepresentations.  Doc. 62 ¶¶ 43-45.  First, Mixon accepted a UM coverage selection form from "someone" who forged Britton Martin's name on the form and dated it June 11, 2015, even though the form was not signed until sometime after the Martins' accident on June 19.  *Id.* ¶¶ 17, 18, 43.  Second, Mixon accepted another UM coverage selection form dated June 11, even though, again, the form was not signed until after June 19.  *Id.* ¶¶ 19, 44.  Mixon, by his default, admits he made those misrepresentations, but the amended complaint alleges those misrepresentations occurred after the insurance policy was bound and after the Martins' accident.  *Id.* ¶¶ 15-19.  Thus, those misrepresentations, according to the amended complaint, were not the cause of the damages Buckeye seeks.  Those damages arose because the Defendants bound the policy without getting the necessary coverage forms, and Buckeye does not allege fraud in that transaction.  Nor did Buckeye put up any evidence of damages resulting from the misrepresentations.

Accordingly, because Mixon's misrepresentations were not the cause of Buckeye's damages, Buckeye's fraudulent misrepresentation claim against Mixon fails.

**4.  Promissory Estoppel**

Buckeye asserts a claim for promissory estoppel against Mixon.  Doc. 62 ¶¶ 47-52.  "To prevail on a promissory estoppel claim, the plaintiffs must show that (1) defendant made certain promises, (2) defendant should have expected that plaintiffs would rely on such promises, (3) the plaintiffs did in fact rely on such promises to their

detriment, and (4) injustice can be avoided only by enforcement of the promise." *Sparra v. Deutsche Bank Nat. Trust Co.*, 336 Ga. App. 418, 421, 785 S.E.2d 78, 83 (2016). This doctrine is codified at O.C.G.A. § 13-3-44, which reads, "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." O.C.G.A. § 13-3-44.

Neither the amended complaint nor Buckeye's briefing explains how promissory estoppel fits in this case. For example, Buckeye does not say what promises it wants enforced. Moreover, by way of damages resulting from its reliance on Defendants' promises, Buckeye alleges Defendants "profited." Doc. 62 ¶ 51. But there is no allegation of such profits realized by the Defendants, and at the hearing to liquidate damages, Buckeye presented no evidence of such "profits." Thus, even assuming promissory estoppel somehow fits here, Buckeye has not proved the damages that it alleges resulted from its reliance on Defendants' promises. Buckeye's promissory estoppel claim fails.

### 5. Attorney's Fees and Costs of Litigation

Buckeye asserts a claim for attorney's fees and costs of litigation against Mixon under O.C.G.A. § 13-6-11. However, section 13-6-11 does not create an independent cause of action, and attorney's fees and costs of litigation "are not recoverable when no damages are awarded." *Gardner v. Kinney*, 230 Ga. App. 771, 772 498 S.E.2d 312, 313 (1998). Because Mixon individually has not been found liable to Buckeye for any damages, the claim against him for attorney's fees and costs of litigation fails.

### C. Damages

#### 1. Buckeye's Increased UM Exposure

Because The Agency breached its contract with Buckeye by failing to secure UM selection forms from the Martins before binding their coverage, Buckeye's potential UM exposure increased from $100,000 per incident to $500,000 per incident. Buckeye also was not allowed to deduct the at-fault driver's liability coverage from its UM coverage limits and was instead required to provide the Martins with added on UM coverage.

After the Martins' accident, Buckeye settled with the Martins for a total of $350,000. Docs. 73-23; 73-33. Britton Martin's claim was settled for $250,000, and Dana Martin's claim was settled for $100,000. *Id.* The Court heard testimony explaining that settlement amount and establishing the reasonableness of the settlement at the October 20, 2020 hearing. After hearing testimony and reviewing the admitted evidence, the Court finds that Buckeye reasonably settled the Martins' claims for a total of $350,000.

If The Agency had obtained from the Martins—before their accident—an affirmative choice that they desired UM coverage in an amount of $100,000 per incident, Buckeye would have paid at most $100,000 in UM coverage. O.C.G.A. § 33-7-11(a)(1)(B). Further, if The Agency had obtained from the Martins—before their accident—a writing stating that they desired reduced by UM coverage, Buckeye would have been able to deduct the at-fault driver's liability coverage from Buckeye's potential exposure. O.C.G.A. § 33-7-11(b)(1)(D)(ii)(II). If The Agency had performed its contractual duties and obtained these selections, Buckeye's maximum payout resulting from the Martins' accident would have been $50,000. Instead, Buckeye reasonably

settled the Martins' claims for $350,000, a difference of $300,000. Therefore, because of The Agency's breach, Buckeye suffered actual damages of $300,000.

### 2. Expenses of Litigation

The Agency is also liable to Buckeye for attorney's fees and costs of litigation for being stubbornly litigious by rejecting Buckeye's demands. Doc. 62 ¶ 61. At the October 20 hearing, Buckeye presented evidence of its attorney's fees and other expenses. Doc. 73-32. In total, Buckeye seeks $26,272.50 in attorney's fees and $1,682.87 in costs and expenses. *Id.* Based on the evidence, the Court finds that the fees and expenses Buckeye incurred were reasonable. *See Eways v. Georgia R.R. Bank*, 806 F.2d 991 (11th Cir. 1986).

However, Buckeye limits its claim to the "stubbornly litigious" prong of O.C.G.A. § 13-6-11; it does not allege that The Agency acted in bad faith or that The Agency caused unnecessary trouble or expense. Doc. 62 ¶ 61 ("Plaintiff has made demand upon Defendants for the damages incurred as prayed for in this Complaint, but to date, Defendants have denied Plaintiff's demands or have otherwise failed and/or refused to remedy the damages outline [sic] herein. Plaintiff therefore makes a demand for attorney's fees and cost of litigation as the Defendants have been stubbornly as defined by O.C.G.A. § 13-6-11.").

Buckeye has tendered the itemized bills it received from its attorneys. Thus, it seeks its actual attorney's fees and expenses. Most of the time entries on these bills occurred after Buckeye put The Agency on notice of its claim, and the Court concludes that those entries fall within the scope of Buckeye's allegation that The Agency was stubbornly litigious. But pre-notice entries (December 19, 2016 through March 23, 2017

totaling $2,250.00 in attorney's fees and $7.23 in costs) clearly do not reflect expenses incurred by Buckeye because The Agency was stubbornly litigious.  Doc. 73-21 at 5-6.  However, the work completed by Buckeye's attorneys after March 23, 2017 was related to or in preparation of the lawsuit against The Agency.  Therefore, Buckeye's recoverable attorney's fees total $24,022.50 ($26,272.50 – $2,250.00) and its recoverable costs of litigation total $1,675.64 ($1,682.87 – $7.23).  Doc. 73-32 at 7-31.  The total recovery for expenses of litigation is $25,698.14.

### 3. Punitive Damages

Buckeye asserts a claim for punitive damages against Defendants.  Doc. 62 ¶¶ 60-61.  Buckeye, however, does not seem to pursue this claim in its motion for default judgment.[5]  Doc. 69.  Regardless, Buckeye's claim for punitive damages must fail because Buckeye has succeeded under a breach of contract action, not under a tort action.  O.C.G.A. § 51-12-5.1(b).

## V.  CONCLUSION

For the reasons discussed above, Buckeye's motion for default judgment (Doc. 69) is **GRANTED** as to The Agency and **DENIED** as to Mixon individually.  Buckeye is entitled to actual damages of $300,000.  Buckeye is further awarded $25,698.14 in attorney's fees and costs of litigation.  In sum, default judgment is entered against The Agency in the amount of $325,698.14.

**SO ORDERED**, this 4th day of November, 2020.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[5]  The Court also notes that Buckeye does not include an award for punitive damages in its proposed order for default judgment.